IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


PAPA YOLK'S GRILL, INC.,          §
                                  §
              Plaintiff,          §
                                  §
v.                                §     CIVIL ACTION NO. H-18-2995
                                  §
AMGUARD INSURANCE COMPANY,        §
                                  §
              Defendant.          §


## MEMORANDUM OPINION AND ORDER


Plaintiff Papa Yolk's Grill, Inc. ("Plaintiff") asserts state-law claims against AmgGUARD Insurance Company ("Defendant") for breach of contract, bad faith denial of an insurance claim, and deceptive trade practices.[1]   Pending before the court is Defendant's Motion for Summary Judgment (Docket Entry No. 27). ("Defendant's MSJ").   For the reasons explained below, Defendant's MSJ will be granted.


## I.   Factual and Procedural Background

Plaintiff operated a restaurant business in Pasadena, Texas,

---

[1]Plaintiff's Second Amended Complaint ("Amended Complaint"), Docket Entry No. 22, pp. 4-6.  Unless otherwise noted, all page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

when Hurricane Harvey struck in August of 2017.[2]  The restaurant's premises, leased from Quadvo, LLC, were inaccessible until the third day after the hurricane when the owners entered the property to find "inches of water."[3]  Water appeared to have entered the building from the roof, primarily coming into a storage room in the southwest corner of the property and causing damage inside.[4] Plaintiff contends that hurricane winds damaged the roof and caused rainwater to enter the property.[5]

Plaintiff filed a claim with Defendant, its insurer, to recover water damages.[6]  The insurance in question is an all-risks policy that covers any cause of loss other than those excluded in the contract.[7]  The insurance policy excludes losses that are caused by rainwater damage to the interior unless preceded by

---

[2]Declaration of Neel McGovern, Exhibit D to Plaintiff Pappa Yolk's Grill, Inc.'s Response to Defendant AmGUARD Insurance Co.'s Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 39-4, p. 1.

[3]Id. at 2 ¶¶ 2, 4.

[4]Videotaped Deposition of Neel McGovern ("McGovern Deposition"), Exhibit D to Defendant's MSJ, Docket Entry No. 27-7, pp. 43 lines 8-15, 44 lines 2-5.

[5]Amended Complaint, Docket Entry No. 22, p. 3 ¶ 6.

[6]McGovern Deposition, Exhibit D to Defendant's MSJ, Docket Entry No. 27-7, pp. 54 lines 10-16, 55 lines 4-15.

[7]Businessowner's Coverage Form ("Insurance Policy"), Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 75 § I ¶ A(3).

covered damage to the roof or walls.[8]  The policy also excludes most damage caused by wear-and-tear to or negligent maintenance of property.[9]

A field adjuster, Timothy Frazier, inspected the property on behalf of AmGUARD on September 7, 2017.[10]  Frazier observed that the roof was in "fair condition" and appeared to have been recently coated with sealant.[11]  He concluded that the roof was not damaged by a covered peril under the policy such as wind.[12]  He noted two possible other sources that may have allowed water to enter the building.  First, he found leaking water from an air conditioner pooling on the roof above the southwest storage room.[13]  Second, he concluded that water may have entered the building through a roof extrusion that was directly over the southwest part of the property.[14]  Frazier's expertise was to examine the roof; his report

---

[8]Insurance Policy, Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 75 § I ¶ A(4)(a)(5).

[9]Id. at 91 § I ¶ B(2)(l)(1), 92 § I ¶¶ B(3), B(3)(c)(4).

[10]Audio Transcription of Videotaped Deposition of Timothy Frazier ("Frazier Deposition"), Exhibit C to Plaintiff's Response, Docket Entry No. 39-3, p. 27 lines 1-7.

[11]Claim Adjuster's Report, Exhibit A to Plaintiff's Response, Docket Entry No. 39-1, pp. 2, 12, 22.

[12]Id. at 2; Frazier Deposition, Exhibit C to Plaintiff's Response, Docket Entry No. 39-3, p. 49 lines 14-19.

[13]Claim Adjuster's Report, Exhibit A to Plaintiff's Response, Docket Entry No. 39-1, pp. 28, 30-31.

[14]Id. at 3, 34.

suggested Defendant could hire a cause-and-origin investigator to further look into the source of the water that entered the building.[15]

Defendant did not hire a cause-and-origin investigator because it concluded Frazier's inspection had provided enough information.[16] Based on Frazier's report, Defendant denied Plaintiff's insurance claim in a letter dated September 18, 2017, explaining that the policy does not cover water damage and that there was no evidence of damage to the roof from a "covered peril" such as hurricane wind.[17]   Defendant declined to provide Frazier's report to Plaintiff, as it considers such reports to be confidential work product.[18]

On August 29, 2018, Plaintiff filed this action asserting breach of contract, bad faith denial of an insurance claim, and deceptive trade practices against Defendant.[19]   Plaintiff amended

---

[15]See id. at 3 ("We have requested authorization to possibly employ a Cause and Origin Investigator."); Frazier Deposition, Exhibit C to Plaintiff's Response, pp. 31-32.

[16]Videotaped Deposition of Nona F. Loftus ("Loftus Deposition"), Exhibit B to Plaintiff's Response, Docket Entry No. 39-2, p. 20 lines 9-21.

[17]Letter from AmGUARD to Pappa Yolk's Grill, Inc. ("Denial Letter"), Exhibit B-2 to Defendant's MSJ, Docket Entry No. 27-4, pp. 1, 3; see also Insurance Policy, Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 89.

[18]See Loftus Deposition, Exhibit B to Plaintiff's Response, Docket Entry No. 39-2, p. 21 lines 11-23.

[19]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 1,
(continued...)

its complaint on January 2, 2019.[20]  Discovery has concluded.[21]  On
November 25, 2019, Defendant filed its motion for summary
judgment.[22]  Plaintiff filed its response on January 31, 2020.[23]
Defendant replied on February 6, 2020.[24]

## II.  <u>Standard of Review</u>

Summary judgment is appropriate if the movant establishes that
there is no genuine dispute about any material fact and the movant
is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
Disputes about material facts are genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510
(1986).  The moving party is entitled to judgment as a matter of
law if "the nonmoving party has failed to make a sufficient showing
on an essential element of her case with respect to which she has
the burden of proof."  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548,
2552 (1986).

---

[19](...continued)
4-5.

[20]Amended Complaint, Docket Entry No. 22.

[21]Docket Control Order, Docket Entry No. 17, p. 2 ¶ 6.

[22]Defendant's MSJ, Docket Entry No. 27.

[23]Plaintiff's Response, Docket Entry No. 39.

[24]Defendant's Reply to Plaintiff's Response to Its Motion for
Summary Judgment ("Defendant's Reply"), Docket Entry No. 41.

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting <u>Celotex</u>, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." <u>Id.</u> If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

### III.  __Law and Analysis__

Plaintiff asserts three theories of liability:  (1) breach of contract, (2) bad faith denial of an insurance claim in violation of the Texas Insurance Code, and (3) violation of the Texas Deceptive Trade Practices Act ("DTPA").[25]  Defendant argues that all of these claims fail because there is no evidence to establish at least a genuine issue of material fact that Plaintiff suffered damage from a loss covered by the policy.[26]

### A.  **Breach of Contract**

Plaintiff alleges that Defendant breached the insurance contract when it denied Plaintiff's claim to be reimbursed for the water damage.  Defendant contends that Plaintiff's breach of contract claim fails because it can point to no evidence that would permit a fact-finder to attribute any portion of the damages to a covered peril - here, damage resulting from the hurricane winds.[27]  Plaintiff responds with three general arguments:  (1) coverage under the policy is broader than Defendant's claim, and (2) there is evidence of covered damage or at least Defendant's conduct in investigating and rejecting the claim suffices to create a genuine issue of material fact as to breach of contract.

---

[25]Amended Complaint, Docket Entry No. 22, pp. 4-6.

[26]Defendant's MSJ, Docket Entry No. 27, p. 7.

[27]Id. at 17.

1.  <u>Coverage Terms of the Insurance Policy</u>

To determine which facts are material to Plaintiff's claim, the court must look to the insurance policy.  Defendant contends that Plaintiff cannot recover because coverage of interior water damage is limited to when the structure's exterior first sustains damage by a "Covered Cause of Loss."[28]  Plaintiff argues that the policy covered the damage under two theories:  (1) that the water intrusion damage was covered because the policy is an "all-risks" policy, and (2) that Quadvo's potential negligence in failing to maintain the roof was a concurrent cause and could at least be reasonably construed as a covered loss under the contract.[29]

In Texas, "courts are to construe insurance policies 'using ordinary rules of contract interpretation.'"  <u>Nassar v. Liberty Mutual Fire Insurance Co.</u>, 508 S.W.3d 254, 257 (Tex. 2017) (quoting <u>Tanner v. Nationwide Mutual Fire Insurance Co.</u>, 289 S.W.3d 828, 831 (Tex. 2009)).  "When doing so, courts must 'determine[e] the parties' intent as reflected in the terms of the policy itself." <u>Id.</u> at 258.  Courts must "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless."  <u>Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London</u>, 327 S.W.3d 118, 126 (Tex. 2010).  "[Courts] give

---

[28]Defendant's Reply, Docket Entry No. 41, p. 4.

[29]Plaintiff's Response, Docket Entry No. 39, pp. 13, 19.

-8-

words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." RSUI Indemnification Co. v. The Lynd Co., 466 S.W.3d 113, 118 (Tex. 2015). Such interpretation is generally a question of law. Smith v. American Family Life Assurance Co., 584 F.3d 212, 215 (5th Cir. 2009). Whether an insurance policy is ambiguous is also a question of law. Id.

The limitations clause of the policy states that the insurer "will not pay for loss or damage to . . . [t]he interior of any building or structure caused by or resulting from rain . . ., whether driven by wind or not, unless[] [t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls."[30]  The policy therefore does not cover the water damage to the interior of Plaintiff's business unless there was some cause of loss other than rain.  Plaintiff's argument that the water damage falls under the general coverage of the all-risk policy without regard to evidence of other damage lacks merit.

Other than wind damage to the roof, the only other cause of loss Plaintiff suggests that might allow coverage under the policy is negligent maintenance of the roof by the landlord, Quadvo LLC.[31] The policy states the insurer "will not pay for loss or damage

---

[30]Insurance Policy, Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 75 § I ¶¶ A(4), A(4)(a)(5).

[31]Plaintiff's Response, Docket Entry No. 39, p. 19.

caused by" "[f]aulty, inadequate or defective . . . [m]aintenance[]
of part or all of any property.[32]  But if negligent maintenance
"results in a Covered Cause of Loss," the insurer "will pay for the
loss or damage caused by that Covered Cause of Loss."[33]  Plaintiff
argues that this provision at least creates ambiguity as to whether
the rainwater damage was a covered loss.

        "A contract is not ambiguous if it can be given a definite or
certain meaning as a matter of law." Columbia Gas Transmission
Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  A
contract is ambiguous only if it is subject to two or more
reasonable interpretations.  Id.  The negligent-maintenance and
interior-rain-damage clauses, taken together, plainly mean that if
there is negligent maintenance and interior rain damage, but no
covered cause of loss, there is no coverage under the policy.
Plaintiff's interpretation that these clauses may work together to
allow coverage without a separate covered cause of loss is
unreasonable, and accordingly the court concludes that these
provisions are not ambiguous.  Neither provision creates coverage
under the policy in the absence of a covered cause of loss.

---

[32]Insurance Policy, Exhibit A to Defendant's MSJ, Docket Entry
No. 27-1, 92 § I ¶¶ B(3), B(3)(c).

[33]Id.

2.   <u>Evidence of a Covered Cause of Loss</u>

Plaintiff's claim for breach of the insurance contract requires a showing of some covered cause of loss to the structure that caused the interior rain damage.   Plaintiff's theory of a covered loss is wind damage from Hurricane Harvey, but Defendant points out that no inspector's report or witness found such damage to the property.[34]   The burden therefore shifts to Plaintiff to demonstrate there is a genuine issue of material fact as to covered damage from wind or another source.   See <u>Celotex</u>, 106 S. Ct. at 323.

Plaintiff argues that the burden on summary judgment rests with Defendant to point to evidence showing the complete absence of a covered cause of loss because Defendant withheld and misrepresented the contents of Frazier's report during the claim process.[35]   But Plaintiff cites no authority to support this argument, and the court is persuaded that <u>Celotex</u>'s burden-shifting framework applies.   Defendant's refusal to provide Frazier's report does not relate to Plaintiff's breach-of-contract claim, which requires a showing that Plaintiff suffered a covered loss that Defendant refused to pay in breach of the insurance contract.

Plaintiff points to two pieces of evidence:   (1) a declaration by Jay McKee, the insurance agent for the policy, and (2) Frazier's

---

[34]Defendant's MSJ, Docket Entry No. 27, p. 17.

[35]Plaintiff's Response, Docket Entry No. 39, p. 4.

-11-

report and deposition.[36]  Jay McKee's declaration states that "[i]t was likely wind, a covered peril, that pushed water . . . to vulnerable areas for water entry" and that "negligent maintenance . . . was a concurrent cause with the wind."[37]  However, this declaration directly contradicts the deposition testimony in which McKee stated that he did not know how water entered the building.[38] McKee's declaration does not explain how he now has knowledge that he lacked during his deposition.  The court will not consider McKee's speculation that wind caused water to enter the building because it contradicts his prior sworn testimony.  See Winzer v. Kaufman County, 916 F.3d 464, 472 (5th Cir. 2019) ("Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'")

Plaintiff also argues there is a fact issue to as the cause of the water damage because Frazier's report was inconclusive about how water entered the building.  Frazier's report suggested that Defendant should hire a cause-and-origin expert; in his deposition, he stated this was because he "wanted to make sure and give the

---

[36]Id. at 19-20.

[37]Declaration of Jay McKee, Exhibit E to Plaintiff's Response, Docket Entry No. 39-5, p. 2 ¶ 1.

[38]Oral and Videotaped Deposition of Jay McKee ("McKee Deposition"), Exhibit C to Defendant's MSJ, Docket Entry No. 27-6, p. 57 lines 2-3.

insured the benefit of the doubt."[39]   In order to survive summary judgment, however, Plaintiff must show more than some "metaphysical doubt" as to the cause of the water damage.  See Matsushita Electric, 106 S. Ct. at 1356 (1986).   That Frazier's report suggested that there may be some doubt is insufficient; it is not affirmative evidence that the roof was damaged by wind or any other covered peril and does not create a fact issue.  Plaintiff points to no specific evidence that might establish at trial that the water damage was the result of a covered loss such as wind damage from the hurricane.

Furthermore, the doctrine of concurrent causes requires that when an insured suffers damage from a combination of covered and non-covered perils, he must "provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not." National Union Fire Insurance v. Puget Plastics Corp., 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010). Failure to do so is fatal to the claim.  Id. at 669.  Plaintiff asserts that the landlord's negligent maintenance of the roof was a concurrent cause of the loss, but as explained above negligent maintenance is not a covered loss under the policy.  Plaintiff has pointed to no evidence that would permit a jury or the court to allocate damages between the negligent maintenance and other causes.

---

[39]Claim Adjuster's Report, Exhibit A to Plaintiff's Response, Docket Entry No. 39-1, p. 3; Frazier Deposition, Exhibit C to Plaintiff's Response, Docket Entry No. 39-3, p. 50 lines 1-6.

In the alternative, Plaintiff argues that its breach of contract claim should survive summary judgment because it can allocate $701.89 in losses to spoilage of inventory due to a power outage and a $5,000 loss for business interruption from closed roads as covered by the policy.[40]  Plaintiff has not pleaded or sought recovery for a denied claim as to spoilage and business interruption losses, and cannot raise them now to save its breach-of-contract claim based on the water damage from summary judgment. See Rains v. BNSF Railway Co., Civil Action No. 4:06-CV-858-Y, 2008 WL 5539476, at *2 (N.D. Tex. Aug. 27, 2008) (citing Northern States Power Co. v. Federal Transit Administration, 358 F.3d 1050, 1057 (8th Cir. 2004)).

The court concludes Plaintiff has failed to point to evidence that would create a genuine issue of material fact as to whether it suffered a loss covered by the policy.  Accordingly, summary judgment as to the breach-of-contract claim will be granted.

## B.   Texas Insurance Code and DTPA Claims

Plaintiff alleges Defendant violated sections 541.051, 541.060, and 541.061 of the Texas Insurance Code by making misrepresentations and engaging in unfair settlement practices.[41] Plaintiff also alleges a DTPA claim on the same bases.[42]  Defendant

---

[40]Plaintiff's Response, Docket Entry No. 39, pp. 23-24.

[41]Amended Complaint, Docket Entry No. 22, p. 5 ¶ 12.

[42]Id. at 6 ¶ 15.

-14-

seeks summary judgment on these claims, arguing that they fail as a matter of law, and alternatively that they are not supported by evidence.

Under Texas law, extra-contractual claims against insurers fail if they rely on the denial of a claim that was not covered by the policy. USAA Texas Lloyds Co. v. Menchaca, 545 S.W.3d 479, 491 (Tex. 2018). "[T]he rule is based on the principle that an insured who sues an insurer for statutory violations can only recover damages 'caused by' those violations." Id. The Texas Insurance Code only permits recovery of "actual damages" - damages the insured sustains because of the statutory violation. Id.; see Tex. Ins. Code § 541.151. Loss of policy benefits that were not available under the policy does not constitute "actual damages." See Menchaca, 545 S.W.3d at 492-93. Moreover, this rule precludes recovery of other damages that "flow" or "stem from" the denial of policy benefits. Id. at 500. These principles also apply to extra-contractual claims brought under the DTPA. Higginbotham v. State Farm Mutual Automobile Insurance Co., 103 F.3d 456, 460 (5th Cir. 1997).

Plaintiff's bad faith allegations rely on Defendant's failure to reasonably investigate and the unreasonable denial of its claim. An insurer's alleged failure to reasonably investigate a claim is not an exception to the rule of no extra-contractual recovery for the denial of a claim not owed under the policy. In re Allstate County Mutual Insurance Co., 447 S.W.3d 497, 501 (Tex. App.-Houston

[1st Dist.] 2014, orig. proceeding).  As explained above, there is no genuine issue of material fact that Plaintiff suffered a loss covered by the contract that Defendant was obligated to pay. Plaintiff's bad faith claims do not permit recovery for that loss, and accordingly fail to the extent that they rely on it.

Plaintiff also argues it suffered an independent injury – that Defendant's withholding of Frazier's report led to difficulty and expenses in evaluating and contesting the claim decision.[43]  But these costs related to investigating and contesting a denied claim "stem from" the denial of that claim and are not recoverable.

Plaintiff also argues that Defendant's conduct led Plaintiff to fail to sue its landlord for negligent maintenance within the two-year limitations period.[44]  Plaintiff contends that it missed the opportunity to sue because it could not review Frazier's conclusion that there was no issue of subrogation.[45]  But subrogation is merely the right of the insurer to recover from a third party who caused a loss that was covered under the policy. See Harris v. American Protection Insurance Co., 158 S.W.3d 614, 622 (Tex. App.-Fort Worth 2005, no pet.).  When there is no covered loss, there is necessarily no subrogation.  Frazier's conclusion that there was no subrogation therefore would have given Plaintiff

---

[43]Plaintiff's Response, Docket Entry No. 39, pp. 22-23.

[44]Id. at 23; see Claim Adjuster's Report, Exhibit A to Plaintiff's Response, Docket Entry No 39-1, p. 3.

[45]Plaintiff's Response, Docket Entry No. 39, p. 23.

no new information that Defendant's denial of the claim as not covered would not. Defendant first denied the claim in the letter dated September 18, 2017, less than one month after the hurricane struck.[46] Accordingly, there is no genuine issue of material fact as to whether Plaintiff's failure to timely sue its landlord was caused by Defendant's withholding the report.

Finally, Plaintiff argues that its owner, Neel McGovern, suffered damages that should qualify as independent injuries because he was not party to the policy.[47] This argument cannot save Plaintiff's claims because Neel McGovern is not a party to the action and his alleged injuries are vicarious through and no different from those that Plaintiff, his corporation, has claimed.

In conclusion, Plaintiff's bad faith and DTPA claims rely on alleged damages resulting from the denial of a claim that was not covered under the policy, and Plaintiff has pointed to no independent injury resulting from Defendant's conduct. Accordingly, Defendant's MSJ as to Plaintiff's Texas Insurance Code and DTPA claims will be granted.

## C.   Plaintiff's Request for Leave to Late Designate an Expert Will Be Denied

Plaintiff requests the court grant it leave to designate "an

---

[46]Denial Letter, Exhibit B-2 to Defendant's MSJ, Docket Entry No. 27-4, p. 1.

[47]Id. at 22 n.16.

additional expert" instead of granting Defendant's MSJ.[48]   The court-ordered deadline for the Plaintiff to identify orders was October 9, 2019, and the deadline for the completion of discovery was December 31, 2019.[49]  In deciding a request to designate experts after the deadline has expired, the court looks to:  "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party in allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony."  Qualls v. State Farm Lloyds, 226 F.R.D. 551, 553 (N.D. Tex. 2005) (citing Barrett v. Atlantic Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996)).

As to the first factor, Plaintiff offers no explanation as to why it was unable to designate the additional expert in compliance with the court-ordered deadline.  And the court cannot adjudge the importance of an additional expert because Plaintiff has not identified the expert or the nature of his testimony.  The first and fourth factors therefore weigh against granting leave.

The court also finds that granting leave would prejudice Defendant.  Defendant's MSJ relies on Plaintiff's failure to designate any expert to testify as to the cause of the water damage.  Defendant would have to depose a newly designated expert and possibly designate another expert of its own.  This would

_____

[48]Id. at 24.

[49]Docket Control Order, Docket Entry No. 17, pp. 1 ¶ 4, 2 ¶ 6.

significantly increase the cost of litigation and delay the
disposition of the case. A continuance would not address this
issue of additional expense and delay. These factors weigh against
granting leave.

The court concludes that the factors combined strongly weigh
against granting leave to designate an additional expert.
Accordingly, the court will deny Plaintiff's request for leave to
designate an additional expert.

## IV. Conclusion and Order

For the reasons explained above, the court concludes there is
no genuine issue of material fact as to whether Plaintiff suffered
a loss covered by the insurance policy or an independent injury due
to Defendant's claim investigation and handling. Defendant's
Motion for Summary Judgment (Docket Entry No. 27) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 15th day of April, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE